[No. S033710. July 28, 1994.]

WESTERN STEAMSHIP LINES, INC., Plaintiff and Appellant, v.
SAN PEDRO PENINSULA HOSPITAL, Defendant and Appellant.

---

**COUNSEL**

Kussman & Whitehill, Michael H. Whitehill and Russell S. Kussman for Plaintiff and Appellant.

Rushfeldt, Shelley & Drake, Allan L. Rushfeldt, Linda C. Miller, Horvitz & Levy, Daniel J. Gonzalez, S. Thomas Todd and Sandra J. Smith for Defendant and Appellant.

Thelen, Marin, Johnson & Bridges and Curtis A. Cole as Amici Curiae on behalf of Defendant and Appellant.

---

**OPINION**

**ARABIAN, J.**—The question presented is whether Civil Code section 3333.2, limiting recovery of noneconomic damages by an injured party against a health care provider, applies in an action for partial equitable indemnification by a concurrent tortfeasor. After careful consideration of the public policy underlying the Medical Injury Compensation Reform Act (MICRA), of which section 3333.2 is an integral part, we conclude that such limitation is necessary to effectuate the statutory scheme and that it is consistent with common law principles of implied indemnity requiring joint liability as a predicate to recovery. Accordingly, we reverse the decision of the Court of Appeal, which declined to extend the coverage of section 3333.2 to the facts of this case.

## I. FACTS AND PROCEDURE

On October 28, 1983, Ann Lennon, an assistant purser for plaintiff, Western Steamship Lines, Inc. (Western), became seriously ill while working aboard one of its cruise ships. Lennon, who suffered from diabetes, was attended to for several days at sea by the ship's medical staff. When the vessel docked, she was rushed unconscious to defendant San Pedro

Peninsula Hospital (the hospital) where she was treated by Dr. Samuel Wirtschafter and other members of the hospital staff. The following day, Lennon suffered cardiac arrest and oxygen deprivation when she was improperly intubated, resulting in irreversible brain damage. She never regained consciousness.

Lennon's legal guardian brought suit against Western in Florida for maintenance and cure and unearned wages based on negligence and unseaworthiness. Western admitted liability,[1] and the matter went to trial on the issue of damages. The jury returned a general verdict awarding Lennon $7.75 million, including $775,000 for maintenance and cure.[2] Pending Western's appeal, Lennon died; however, under pertinent law the appellate court could not take this fact into consideration in determining the validity or reasonableness of the judgment. Western subsequently settled with Lennon's guardian for a total of $6 million, including maintenance and cure.[3]

After paying the settlement, Western instituted the present action seeking indemnification from the hospital and Dr. Wirtschafter based upon an allocation of their proportionate liability for Lennon's injuries. Shortly before trial, Dr. Wirtschafter settled with Western for $1 million. In a subsequent bifurcated proceeding, the jury found all parties had been negligent in treating Lennon and fixed the relative fault of the doctor at 50 percent, the hospital at 30 percent, and Western at 20 percent.

The court then addressed the question of damages. Ultimately, the court ruled that Western could seek an equitable apportionment of the $6 million based upon the reasonableness of its settlement with Lennon and did not have any additional burden of proof as to her damages. It further determined that MICRA did not apply to Western's indemnification claim because "[t]his is an action for contribution [*sic*] from [the hospital and Dr.

---

[1]Under federal maritime law, a shipowner is strictly liable for an employee's medical care. (See *Fitzgerald* v. *A.L. Burbank & Co.* (2d Cir. 1971) 451 F.2d 670, 679, 14 A.L.R.Fed. 525; *Central Gulf Steamship Corporation* v. *Sambula* (5th Cir. 1968) 405 F.2d 291, 297, 16 A.L.R.Fed. 70; see also 46 U.S.C. § 688 [Jones Act].)

[2]Apparently, Western affirmatively declined to request a special verdict directing the jury to allocate the award between general and special damages.

[3]The record indicates that, except for a $1,000 deductible, Western's maritime insurance carrier, Assuranceforeninger Skuld Protection and Indemnity Club, paid all of Western's expenses including the settlement, maintenance and cure payments, attorney fees, and costs. It is not clear, however, whether a settlement or judgment has a financial impact on future premiums. On review, the hospital does not renew its contention that Western can seek indemnity only for the $1,000 deductible because that is the extent of its actual loss. (See *Kirtland & Packard* v. *Superior Court* (1976) 59 Cal.App.3d 140, 145-147 [131 Cal.Rptr. 418].)

Wirtschafter], found to be tort-feasors, for damages in an amount already established and for monies already paid by [Western] by reason of a judgment rendered against it . . . . [¶] This is not an action in subrogation. [¶] [Western] is not an 'injured' party within the meaning of MICRA. [¶] It is not an action for future damages or non-economic damages to recover a non-economic loss." The court also determined that "the Florida verdict [was] a fair and equitable assessment of damages awarded for Lennon's injuries" and that the settlement "was reasonable, fair and done in good faith."[4] Accordingly, the court entered judgment against the hospital for $1.8 million, 30 percent of the $6 million paid by Western to settle the underlying action.

The Court of Appeal affirmed. In analyzing the applicability of Civil Code section 3333.2, the court emphasized that Western's loss as a result of the settlement was entirely "economic" in nature and that the statute purports to place a $250,000 limit only on "noneconomic" damages. (See *Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 159 [211 Cal.Rptr. 368, 695 P.2d 665].) It also found no other basis in the MICRA statutory scheme for invoking its limitations against an indemnitee seeking an allocation of liability involving the negligence of a health care provider. Citing instances in which a claim for indemnity has been considered distinct and independent from the underlying litigation, the court rejected the hospital's argument that an indemnitee "stands in the shoes" of and therefore is restricted to the same rights as the injured party. With respect to proof of damages, the court found substantial evidence to support the trial court's finding of a reasonable settlement, impliedly concluding that Western did not have an independent burden to establish the extent of Lennon's damages or the hospital's liability to her.

We granted the hospital's petition for review principally to determine a matter of statewide importance concerning the applicability of a key provision of MICRA to actions for partial equitable indemnification.[5]

---

[4] The trial court took issues relating to damages under submission and prior to ruling allowed the hospital to present its own evidence segregating Lennon's past and future economic and noneconomic damages. On that basis, and taking into consideration Lennon's death, the court concluded that MICRA would have applied to an action brought against the health care providers by Lennon herself and would have limited her recovery to $1,158,573: $908,573 for maintenance and cure, medical expenses, and lost wages, plus $250,000 for pain and suffering.

[5] Both at trial and on appeal, the hospital contended that in addition to Civil Code section 3333.2, other provisions of MICRA, including Civil Code section 3333.1, partially abrogating the collateral source rule, and Code of Civil Procedure section 667.7, providing for periodic payments of future damages in excess of $50,000, applied under the facts of this case. The

## II. Discussion

### A. *Partial Equitable Indemnification and MICRA*

Civil Code section 3333.2 (section 3333.2) provides in part as follows:

"(a) In any action for injury against a health care provider based on professional negligence, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage.

"(b) In no action shall the amount of damages for noneconomic losses exceed two hundred fifty thousand dollars ($250,000)."

The Court of Appeal held that this limitation does not apply because Western's claim for indemnity is distinct from Lennon's medical malpractice suit and seeks only economic damages resulting from its settlement payment. Thus, it does not come within the express terms of section 3333.2. The court also concluded that a "dispassionate reading" of the MICRA statutory scheme does not reveal any intention to include indemnification actions within its restrictions on recovery of damages.

This analysis misperceives the proper scope of the court's inquiry in cases of equitable indemnification. The issue here is not a narrow question of statutory construction, but a broader examination of whether Western's recovery, in whole or in part, is appropriate under all relevant circumstances. In determining the availability of equitable indemnity, each case must be evaluated in its own unique context to determine whether and to what extent one concurrent tortfeasor is permitted to recover from another.

### 1. *The doctrine of equitable indemnification*

We begin our examination of the issue at hand with a brief overview of the governing principles: California's doctrine of equitable or implied indemnification is a development of the common law, first applied by this court in *City & County of San Francisco* v. *Ho Sing* (1958) 51 Cal.2d 127 [330 P.2d 802]. There, we held that the city had a right to recover from a property owner the amount paid a third party injured due to the property owner's negligent alteration to the city's sidewalk. (*Id.*, at p. 138.) Although

---

hospital does not renew these contentions on review. Thus, we have no occasion to express any opinion concerning the applicability of any other part of the statutory scheme to equitable indemnification actions.

the city had primary responsibility under the Public Liability Act of 1923 for maintaining the sidewalk in a safe condition, the adjoining property owner created the particular hazard for his own benefit. This disparity in the relative culpability justified allowing the city to recoup from the more actively negligent wrongdoer. (*Id.*, at pp. 131-135.)

At the time it entered our common law, indemnity permitted one tortfeasor to shift the entire burden of loss incurred by judgment or settlement to another tortfeasor.[6] " 'It is a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.' " (*Alisal Sanitary Dist. v. Kennedy*, *supra*, 180 Cal.App.2d at p. 75.) Distinctions between "active" and "passive" fault, "primary" and "secondary" liability, and similar characterizations of the relationship between or among concurrent tortfeasors served as the theoretical underpinnings of equitable indemnification and guided its application. (See *Ford Motor Co.* v. *Robert J. Poeschl, Inc.* (1971) 21 Cal.App.3d 694, 696-697 [98 Cal.Rptr. 702].) At the same time, courts often frankly admitted that the standard was vague and imprecise: "No one explanation appears to cover all cases." (*Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69, 74 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]; *Atchison, T. & S. F. Ry. Co.* v. *Lan Franco* (1968) 267 Cal.App.2d 881, 886 [73 Cal.Rptr. 660]; see also *American Motorcycle Assn.* v. *Superior Court* (1975) 20 Cal.3d 578, 594, fn. 4 [146 Cal.Rptr. 182, 578 P.2d 899] [*AMA*]; Prosser & Keeton, Torts (5th ed. 1984) § 51, pp. 343-344.)

Nevertheless, the restitutionary nature of indemnification clearly emerged as a common thread. "The basis for indemnity is restitution, and the concept that one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay. . . . As [stated] in the Restatement of Restitution: 'A person is enriched if he has received a benefit. . . . A person is unjustly enriched if the retention of the benefit would be unjust. . . . A person confers a benefit . . . not only when he adds to the property of another, but also when he saves the other from

---

[6]Indemnity is distinguished from the related doctrine of contribution in that the latter "presupposes a common liability which is shared by the joint tortfeasors on a pro rata basis." (*Alisal Sanitary Dist.* v. *Kennedy* (1960) 180 Cal.App.2d 69, 75 [4 Cal.Rptr. 379].) At common law neither contribution nor indemnity was available (*Merryweather* v. *Nixan* (K.B. 1799) 101 Eng. Rep. 1337); however, in 1957 the Legislature statutorily authorized contribution "[w]here a money judgment has been rendered jointly against two or more defendants in a tort action" "after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof." (Code Civ. Proc., § 875, subds. (a) & (c); see generally, *id.*, §§ 875-880.)

expense or loss. The word "benefit," therefore, denotes any form of advantage.' [Citation.]" (Rest.2d Torts, § 886B, com. *c*, pp. 345-346; see *Atchison, T. & S. F. Ry. Co.* v. *Lan Franco, supra,* 267 Cal.App.2d at pp. 885-886; *Herrero* v. *Atkinson, supra,* 227 Cal.App.2d at p. 74.)

Notwithstanding its equitable character, implied indemnity necessarily operated as an all-or-nothing shifting of loss, and thus did not always rectify the injustice at which it aimed. (See *Ford Motor Co.* v. *Robert J. Poeschl, Inc., supra,* 21 Cal.App.3d at p. 699.) In the wake of *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], this court recognized the need to reevaluate the concept and to conform its application to principles of comparative fault. Accordingly, 20 years after its incorporation into state law, we concluded "that the long-recognized common law equitable indemnity doctrine should be modified to permit, in appropriate cases, a right of partial indemnity, under which liability among multiple tortfeasors may be apportioned on a comparative negligence basis." (*AMA, supra,* 20 Cal.3d at p. 583.)

Although a significant development, the change from a shifting of loss to an apportionment of damages did not affect the essential restitutionary character of equitable indemnity. (*Tatum* v. *Armor Elevator Co.* (1988) 203 Cal.App.3d 1315, 1320 [250 Cal.Rptr. 775]; see *AMA, supra,* 20 Cal.3d at p. 595.) Nor did it alter the principle that indemnification "is not automatically available . . . for all tortfeasors who injure the same plaintiff; the courts evaluate the circumstances of the case to determine if its application is appropriate. [Citations.]" (*Woodward-Gizienski & Associates* v. *Geotechnical Exploration, Inc.* (1989) 208 Cal.App.3d 64, 67 [255 Cal.Rptr. 800]; see *AMA, supra,* 20 Cal.3d at p. 583; *Herrero* v. *Atkinson, supra,* 227 Cal.App.2d at p. 74.) Our decision in *AMA* expressly acknowledged "a number of significant exceptions to th[e] general rule" of indemnity, including immunity for good faith settlements and exclusivity of workers' compensation. (*AMA, supra,* 20 Cal.3d at p. 607, fn. 9.) Indeed, at least one subsequent appellate court has concluded that "*AMA* makes not a rule of general application but a rule riddled with exceptions. Partial indemnity is permitted only in appropriate cases." (*Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934, 941 [155 Cal.Rptr. 393]; see *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420, 428 [190 Cal.Rptr. 400].) Thus, irrespective of the equities between or among multiple tortfeasors, the right is subject to qualification; and countervailing considerations may limit recovery. "As suggested by Dean Prosser, the granting of indemnity in any situation represents a judicial choice of policy" (*Jacobs* v. *General Accident Fire & Life Assur. Corp.* (1961) 14 Wis.2d 1 [109 N.W.2d 462, 467]); and courts

have long recognized that "the doctrine is not available where it would operate against public policy. [Citation.]" (*Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444-1445 [266 Cal.Rptr. 601].)[7]

For example, even as this court reformulated the doctrine of equitable indemnity " 'to distribute the loss [among multiple tortfeasors] in proportion to the allocable concurring fault' " (*AMA, supra,* 20 Cal.3d at p. 598, citation omitted), we also recognized an express exception immunizing from further liability defendants who enter into good faith settlements. (*Id.,* at p. 604; see Code Civ. Proc., § 877.6, subd. (c) [codifying this limitation two years later].) In light of the "strong public policy in favor of encouraging settlement of litigation" reflected in Code of Civil Procedure section 877, which affords similar immunity from contribution (*AMA, supra,* 20 Cal.3d at p. 603), we concluded that "from a realistic perspective the legislative policy underlying the provision dictates that a tortfeasor who has entered into a 'good faith' settlement [citation] with the plaintiff must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor." (*Id.,* at p. 604.) We also acknowledged the express legislative restriction imposed by Labor Code section 3864, which shields employers who have paid workers' compensation from third party liability to concurrent tortfeasors. (*AMA, supra,* 20 Cal.3d at p. 607, fn. 9; see *post,* p. 113.)

In view of the foregoing principles, resolution of this case must of necessity contemplate matters beyond the four corners of section 3333.2. In assessing whether indemnity is "appropriate," the court's task does not begin or end with a determination that Western is entitled to full recovery because it does not seek any "noneconomic" damages. ■ This analysis begs the question since "a fundamental prerequisite to an action for partial or total equitable indemnity is an actual monetary loss through payment of a judgment or settlement." (*Christian* v. *County of Los Angeles* (1986) 176 Cal.App.3d 466, 471 [222 Cal.Rptr. 76]; cf. *Miller* v. *American Honda Motor Co.* (1986) 184 Cal.App.3d 1014, 1019 [229 Cal.Rptr. 523].) Such a

[7]See *AMA, supra,* 20 Cal.3d at page 604; *Yamaha Motor Corp.* v. *Paseman* (1990) 219 Cal.App.3d 958, 971 [268 Cal.Rptr. 514]; *Jaffe* v. *Huxley Architecture* (1988) 200 Cal.App.3d 1188, 1193 [246 Cal.Rptr. 432]; *Holland* v. *Thacher* (1988) 199 Cal.App.3d 924, 935 [245 Cal.Rptr. 247]; *Munoz* v. *Davis, supra,* 141 Cal.App.3d at page 429 and footnote 5; *Goldfisher* v. *Superior Court* (1982) 133 Cal.App.3d 12, 19-23 [183 Cal.Rptr. 609]; *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347, 354-355 [156 Cal.Rptr. 326]; *Commercial Standard Title Co.* v. *Superior Court, supra,* 92 Cal.App.3d at page 941; *Held* v. *Arant* (1977) 67 Cal.App.3d 748, 750 [134 Cal.Rptr. 422]; *Herrero* v. *Atkinson, supra,* 227 Cal.App.2d at page 74; see also Prosser and Keeton, *supra,* section 51, pages 344-345.

cramped application of the statutory language fails to account for any countervailing policy considerations that may override the general goal of equitable allocation of loss and require imposing some limitation on the right to indemnity in these particular circumstances. In accordance with the judiciary's traditional function of developing the common law in this area (see *AMA, supra,* 20 Cal.3d at pp. 597, 602), courts must avoid a myopic perspective in favor of a more comprehensive evaluation of the larger context within which they set the measure of an indemnitee's recovery.

After careful review of the legislative intent underlying MICRA in general and section 3333.2 in particular, we conclude that as a necessary adjunct to effectuating the statutory purpose and goals, a health care provider may invoke the $250,000 limit on noneconomic damages in an action for partial equitable indemnity based upon professional negligence. (Cf. *Central Pathology Service Medical Clinic, Inc.* v. *Superior Court* (1992) 3 Cal.4th 181, 191-192 [10 Cal.Rptr.2d 208, 832 P.2d 924].)

## 2. *The public policy of MICRA*

As we have frequently recounted, the Legislature enacted MICRA in response to a medical malpractice insurance "crisis," which it perceived threatened the quality of the state's health care. (*American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 371 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233].) In the view of the Legislature, "the rising cost of medical malpractice insurance was imposing serious problems for the health care system in California, threatening to curtail the availability of medical care in some parts of the state and creating the very real possibility that many doctors would practice without insurance, leaving patients who might be injured by such doctors with the prospect of uncollectible judgments." (*Fein* v. *Permanente Medical Group, supra,* 38 Cal.3d at p. 158; *Barme* v. *Wood* (1984) 37 Cal.3d 174, 180 [207 Cal.Rptr. 816, 689 P.2d 446]; see Stats. 1975, Second Ex. Sess. 1975-1976, ch. 2, § 12.5, p. 4007 [preamble to MICRA].) The continuing availability of adequate medical care depends directly on the availability of adequate insurance coverage, which in turn operates as a function of costs associated with medical malpractice litigation. (See *American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d at p. 372.) Accordingly, MICRA includes a variety of provisions all of which are calculated to reduce the cost of insurance by limiting the amount and timing of recovery in cases of professional negligence. (See Bus. & Prof. Code, § 6146 [limiting contingency fees in medical malpractice actions]; Civ. Code, § 3333.1 [admitting evidence of collateral source payments and precluding subrogation on behalf of collateral sources]; Code Civ. Proc., § 667.7 [authorizing periodic payments for future damages in excess

of $50,000, with termination of benefits in the event of death]; see also *Fein v. Permanente Medical Group, supra,* 38 Cal.3d at p. 159 [upholding § 3333.2 as "rationally related to the objective of reducing the costs of malpractice defendants and their insurers"]; *Roa* v. *Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 931, 932 [211 Cal.Rptr. 77, 695 P.2d 164] [same; Bus. & Prof. Code, § 6146]; *Barme* v. *Wood, supra,* 37 Cal.3d at p. 181 [same; Civ. Code, § 3333.1]; *American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d at p. 372 [same; Code Civ. Proc., § 667.7].)

 MICRA thus reflects a strong public policy to contain the costs of malpractice insurance by controlling or redistributing liability for damages, thereby maximizing the availability of medical services to meet the state's health care needs. (See *Barme* v. *Wood, supra,* 37 Cal.3d at p. 181.) With specific reference to section 3333.2, this court has also observed that "[o]ne of the problems identified in the legislative hearings was the unpredictability of the size of large noneconomic damage awards, resulting from the inherent difficulties in valuing such damages and the great disparity in the price tag which different juries placed on such losses. The Legislature could reasonably have determined that an across-the-board limit would provide a more stable base on which to calculate insurance rates." (*Fein* v. *Permanente Medical Group, supra,* 38 Cal.3d at p. 163.) Exempting indemnity actions from the $250,000 limit would threaten not only this goal but also the broader purpose of MICRA by resurrecting the pre-MICRA instability associated with unlimited noneconomic damages and increasing the overall cost of malpractice insurance to account for these larger recoveries. (*Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695, 704 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063]; see also *Hayes* v. *Mercy Hosp. and Medical Center* (1990) 136 Ill.2d 450 [145 Ill.Dec. 894, 557 N.E.2d 873, 876-877, 88 A.L.R.4th 321] [construing medical malpractice statute of limitations to cover contribution actions against health care providers to effectuate legislative purpose of reducing insurance premiums]; *Wilschinsky* v. *Medina* (1989) 108 N.M. 511 [775 P.2d 713, 718-720] [extending scope of New Mexico Medical Malpractice Act to third party causes of action—even though not expressly covered by the statutory scheme—to preserve goal of reducing insurance costs].) We conclude that applying section 3333.2 to such claims is both necessary to effectuate the intent and policies prompting the MICRA legislation (*Central Pathology Service Medical Clinic, Inc.* v. *Superior Court, supra,* 3 Cal.4th at p. 192) and consonant with the role of the courts "to aid in the familiar common law task of filling in the gaps in the

[MICRA] statutory scheme."[8] (*American Bank & Trust Co.* v. *Community Hospital, supra*, 36 Cal.3d at p. 378.)

This determination finds an instructive analogy in Labor Code section 3864, which enforces the exclusivity of workers' compensation by precluding concurrent tortfeasors from seeking indemnification from negligent employers.[9] (See also, *ante*, pp. 109, 110.) Prior to the statute's enactment in 1959, the Court of Appeal, in *S.F. Unified Sch. Dist.* v. *Cal. Bldg. etc. Co.* (1958) 162 Cal.App.2d 434 [328 P.2d 785], allowed for the possibility that a third party sued for negligence by an injured employee could bring an action for equitable indemnity against the employer alleging that the employer's active negligence caused the harm. (*Id.*, at p. 449.) " '. . . The effect of this rather circular legal procedure was to make the employee's own employer liable not only for the injured employee's workmen's compensation but for additional damages awarded to him at common law as well.' " (*City of Sacramento* v. *Superior Court* (1962) 205 Cal.App.2d 398, 404-405 [23 Cal.Rptr. 43].) " 'The California legislature felt that this double burden placed upon the employer was in contravention of the exclusive remedy theory of the workmen's compensation statutes' ", and therefore enacted Labor Code section 3864 to abolish any right to indemnity other than by express contract. (*City of Sacramento* v. *Superior Court, supra*, 205 Cal.App.2d at p. 405.) More specifically, the statute "had . . . the economic objective of reducing enterprise's insurance costs to the level contemplated by the workmen's compensation law, eliminating the cost of public liability insurance against implied indemnification for injury to the policyholder's own employees. Although the Legislature spoke in terms of the employer's freedom from liability, its real concern was enterprise's cost of insuring against the liability." (*Pacific Gas & Elec. Co.* v. *Morse* (1970) 6 Cal.App.3d 707, 713 [86 Cal.Rptr. 7]; *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 584 [126 Cal.Rptr. 267]; see also *Henning* v. *General Motors Assembly Div.* (1988) 143 Wis.2d 1 [419 N.W.2d 551, 553].)

---

[8]This conclusion is also consistent with the provisions of Civil Code section 3333.1, subdivision (b), expressly precluding the collateral sources enumerated in subdivision (a) from "be[ing] subrogated to the rights of the plaintiff against a [health care] defendant." (See *Barme* v. *Wood, supra*, 37 Cal.3d at p. 181.) Section 3333.1 clearly evidences legislative concern to foreclose possible circumvention of MICRA's intended restrictions on liability for malpractice damages. The fact that the Legislature has expressly precluded only subrogation of collateral sources does not prevent the courts from imposing similar limitations to effectuate other provisions of MICRA. (Cf. *AMA, supra*, 20 Cal.3d at pp. 599-604 [contribution statute did not preclude adoption of comparative partial indemnity].)

[9]Labor Code section 3864 provides as follows: "If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to the injury."

The parallels to MICRA are obvious: The Legislature has enacted a comprehensive, multifaceted scheme designed to address a perceived threat to our state's health care system by reducing the cost of medical malpractice insurance. Section 3333.2 constitutes a key component of this program. Subjecting health care providers to unlimited liability for noneconomic damages in third party suits can only thwart the goal of containing insurance costs by eliminating the statutory constraint on litigation expenses. (See *Colich & Sons* v. *Pacific Bell* (1988) 198 Cal.App.3d 1225, 1238, fn. 17 [244 Cal.Rptr. 714]; *Pacific Gas & Elec. Co.* v. *Morse, supra,* 6 Cal.App.3d at pp. 713-714; cf. *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 761 [163 Cal.Rptr. 585, 608 P.2d 673] [refusing to preclude indemnity on statute of limitations grounds because to do so would undermine legislative mandate of Tort Claims Act].) Moreover, we need not await express legislative action to broaden the application of section 3333.2 to indemnification actions. ■ As a common law doctrine, equitable indemnity not only accommodates but anticipates judicial contouring whenever necessary to effectuate some overarching public policy. (See *AMA, supra,* 20 Cal.3d at pp. 603-604 & fn. 9; cf. *California Home Brands, Inc.* v. *Ferreira* (9th Cir. 1989) 871 F.2d 830, 834 [in applying limitation contained in congressional enactment, "the *absence* of an immunizing provision alone should not be decisive as to the availability of indemnity"].) Our holding is fully consistent with this continuing role.[10]

■ We find further support for our conclusions in the fundamental principle that "there can be no indemnity without liability." (*Munoz* v. *Davis, supra,* 141 Cal.App.3d at p. 425; *GEM Developers* v. *Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 430 [261 Cal.Rptr. 626]; *Colich & Sons* v. *Pacific Bell, supra,* 198 Cal.App.3d at p. 1236; *Allis-Chalmers Corp.* v. *Superior Court* (1985) 168 Cal.App.3d 1155, 1159 [214 Cal.Rptr. 615].) Indemnity does not invariably follow fault; it is premised on a joint legal obligation to another for damages. Accordingly, as against the indemnitee, the indemnitor can invoke any substantive defense to liability that would be available against the injured party. The Court of Appeal correctly noted that for certain procedural purposes, such as statutes of limitations, an indemnity claim is an independent action. (See, e.g., *E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 506 [146 Cal.Rptr. 614, 579 P.2d

---

[10]Moreover, in some instances express legislative ratification has followed similar judicial action. For example, in enacting Code of Civil Procedure section 877.6, which provides that good faith settlements bar claims for comparative indemnity, the Legislature codified the rule originally promulgated by this court in *AMA, supra,* 20 Cal.3d at page 604. (See *Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796, 809, fn. 9 [251 Cal.Rptr. 202, 760 P.2d 399]; *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 496 [213 Cal.Rptr. 256, 698 P.2d 159].)

505].) As to matters of substantive law, however, it is wholly derivative and subject to whatever immunities or other limitations on liability would otherwise be available.[11] (*GEM Developers* v. *Hallcraft Homes of San Diego, Inc.*, *supra*, 213 Cal.App.3d at p. 429; *Woodward-Gizienski & Associates* v. *Geotechnical Exploration, Inc.*, *supra*, 208 Cal.App.3d at p. 68; *Colich & Sons* v. *Pacific Bell*, *supra*, 198 Cal.App.3d at p. 1231; *Mullin Lumber Co.* v. *Chandler* (1986) 185 Cal.App.3d 1127, 1134 [230 Cal.Rptr. 122]; see also *California Home Brands, Inc.* v. *Ferreira*, *supra*, 871 F.2d at p. 834; *Kennedy* v. *Pennsylvania R.R. Co.* (3d Cir. 1960) 282 F.2d 705, 709; *Ft. Worth & Denver Railway Company* v. *Threadgill* (5th Cir. 1956) 228 F.2d 307, 312; *Hendrickson* v. *Minnesota Power & Light Co.* (1960) 258 Minn. 368 [104 N.W.2d 843, 847], overruled on other grounds in *Tolbert* v. *Gerber Industries, Inc.* (Minn. 1977) 255 N.W.2d 362, 364; see Rest., Restitution, § 77, com. *c*, at pp. 343-344; *id.*, § 78, com. *a*, at p. 345; Annot. (1966) 6 A.L.R.3d 1307, 1315.)

For example, in *Colich & Sons* v. *Pacific Bell*, *supra*, 198 Cal.App.3d 1225, an excavation subcontractor (Colich) allegedly struck and damaged an underground telephone cable resulting in an interruption of service to United Air Line (United), a Pacific Bell (Pac Bell) customer that brought a negligence action against Colich for lost business revenues as well as other damages. (*Id.*, at p. 1230.) Colich cross-complained against Pac Bell for comparative indemnity, claiming the telephone company's own negligence had been a concurrent cause of United's loss. Pac Bell demurred on the ground that "as a matter of law [United] could not sue Pac Bell directly for its telephone service interruption under the terms of a limitation of liability tariff filed with the Public Utilities Commission . . . and, therefore, Colich's derivative claim for indemnity and contribution was likewise barred." (*Id.*, at p. 1231.)

To the extent the tariff limited liability to $10,000, the Court of Appeal found this argument persuasive: "Although a defendant would ordinarily

---

[11]Both the Court of Appeal and Western cite numerous cases for the proposition that an indemnification action is separate and distinct from subrogation and an indemnitee does not "stand in the plaintiff's shoes" vis-à-vis the indemnitor. (See, e.g., *People* ex rel. *Dept. of Transportation* v. *Superior Court*, *supra*, 26 Cal.3d at p. 752; *Bush* v. *Superior Court* (1992) 10 Cal.App.4th 1374, 1384 [13 Cal.Rptr.2d 382]; *American Bankers Ins. Co.* v. *Avco-Lycoming Div.* (1979) 97 Cal.App.3d 732, 737 [159 Cal.Rptr. 70].) Although these cases may correctly state the law governing certain procedural bars, the analyses do not purport to limit an indemnitor's ability to assert a substantive defense to or a limitation on liability against the indemnitee to the same extent the defense or limitation would be available against the injured party. As we discuss, *post*, the established rule is to the contrary in that a procedural bar bears no relation to the fundamental question of liability. (See *Frank* v. *State of California* (1988) 205 Cal.App.3d 488, 494 [252 Cal.Rptr. 410].)

have a right to file a cross-complaint for indemnity against a concurrent tortfeasor, 'there can be no indemnity without liability.' [Citation.] 'In other words, unless the prospective indemnitor and indemnitee are jointly and severally liable to the plaintiff there is no basis for indemnity.' [Citation.] But here, Pac Bell cannot be held jointly and severally liable because its liability is strictly limited by the tariff which has the force of law. To allow Colich to cross-complain for damages for ordinary negligence herein would thwart the undisputed general [Public Utility Commission] policy to limit the telephone utility's liability for ordinary negligence for service interruptions and hinder its rate-making functions." (*Colich & Sons* v. *Pacific Bell, supra*, 198 Cal.App.3d at p. 1236.)

We apply the same analysis to section 3333.2: The statute operates as a limitation on liability. (*Taylor* v. *United States* (9th Cir. 1987) 821 F.2d 1428, 1433.) To the extent it precludes recovery for noneconomic damages against health care providers in excess of $250,000, it concomitantly limits their joint liability irrespective of proportionate fault. Thus, concurrent tortfeasors have no right to indemnification beyond this amount.[12] (*Al-Hazmi* v. *City of Waukegan* (N.D.Ill. 1984) 579 F.Supp. 1441, 1446; cf. Civ. Code, § 1431.2 [eliminating joint liability for noneconomic damages].) To hold otherwise would undermine the Legislature's express limit on health care liability for noneconomic damages as well as jeopardize the purpose of MICRA to ensure the availability of medical care. (See *Ft. Worth & Denver Railway Company* v. *Threadgill, supra*, 228 F.2d at p. 312.)

This conclusion brings us full circle to the underlying restitutionary nature of indemnity and the principle that "if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him." (*Herrero* v. *Atkinson, supra*, 227 Cal.App.2d at p. 74; see, *ante*, pp. 108-109.) If, under section 3333.2, a health care provider has no liability for noneconomic damages in excess of $250,000, then a concurrent tortfeasor that satisfies a judgment or settles with the injured party for a greater

---

[12]Since the indemnitee has a variety of procedural options by which to pursue recovery (see *American Bankers Ins. Co.* v. *Avco-Lycoming Div., supra*, 97 Cal.App.3d at p. 734), any other rule would place a premium on that choice by precluding a defense to liability in a separate proceeding for indemnification that the health care provider would otherwise have available if joined in the original litigation by complaint or cross-complaint. (Cf. *GEM Developers* v. *Hallcraft Homes of San Diego, Inc., supra*, 213 Cal.App.3d at p. 428.) A non-MICRA tortfeasor should not be entitled to greater indemnity simply because the health care defendant was not a party to the underlying negligence action in which it could have asserted the limitation of section 3333.2 simultaneously against the injured plaintiff and the indemnitee. (See *American Bankers Ins. Co.* v. *Avco-Lycoming Div., supra*, 97 Cal.App.3d at pp. 736-737; cf. *Central Pathology Service Medical Clinic, Inc.* v. *Superior Court, supra*, 3 Cal.4th at p. 192; *Hedlund* v. *Superior Court, supra*, 34 Cal.3d at p. 704.) We decline Western's implicit invitation to exalt form over substance in this manner.

amount has not been "compelled to pay" on behalf of another who would have otherwise incurred the loss. ▮▮ ▬ ▮▮ ▮▮ In other words, regardless of the relative apportionment of fault, the health care provider is not unjustly enriched by the payment of damages for which it is not legally obligated.[13] (See Rest., Restitution, § 1, coms. *a* & *b*, at p. 12; *id.*, § 78, com. *a*, at p. 345; cf. Civ. Code, § 1714.1 [$10,000 parental liability for misconduct of child].)

Furthermore, in light of the statutory limit on liability, permitting health care providers to invoke section 3333.2 does not contravene the equitable premise of partial indemnity, i.e., that " 'liability for damage will be borne by those whose negligence caused it in direct proportion to their respective fault.' [Citation.]" (*AMA, supra,* 20 Cal.3d at p. 583.) Our decision in *AMA, supra,* expressly recognized at least two exceptions to this principle and impliedly anticipated others. (*Id.,* at p. 607, fn. 9.) "Inevitably, whenever one concurrent tortfeasor is insolvent or immunized, either partially or completely, from liability, the remaining tortfeasors must pay more than an amount measured by their proportional responsibility for the injury. [Citations.]" (*Colich & Sons* v. *Pacific Bell, supra,* 198 Cal.App.3d at p. 1237; see *Sagadin* v. *Ripper* (1985) 175 Cal.App.3d 1141, 1174 [221 Cal.Rptr. 675]; cf. Rest.2d Torts, § 880.) Such are the realities, if not the vagaries, of multi-party litigation. In this case, the situation is no different than if the hospital had settled with Lennon's guardian for less than $1.8 million or if Western had been required to absorb the hospital's insolvency in excess of $250,000. (*Bracket* v. *State of California* (1986) 180 Cal.App.3d 1171, 1176 [226 Cal.Rptr. 1]; see *Flores* v. *Natividad Medical Center* (1987) 192 Cal.App.3d 1106, 1118 [238 Cal.Rptr. 24].) Moreover, the Legislature has already determined that as between a negligent health care defendant and an innocent plaintiff, the plaintiff will bear the loss of noneconomic damages over the statutory limit. Given the public policy considerations previously discussed, we see no unfairness in shifting this burden instead to a negligent non-MICRA defendant in the case of concurrent tortfeasors.[14] (Cf. *American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d at p. 368.)

---

[13] We disagree with the Court of Appeal that a contrary holding, at least under these facts, somehow contravenes or even implicates the supremacy clause. Allowing the hospital to invoke section 3333.2 does not impair Western's rights or interests under federal maritime law; it simply leaves one concurrent tortfeasor to pay more of the loss than its proportionate fault. (See *Colich & Sons* v. *Pacific Bell, supra,* 198 Cal.App.3d at p. 1237.) We express no opinion as to the appropriateness of limiting indemnification were the impact with respect to federal law otherwise. (Cf. *Barme* v. *Wood, supra,* 37 Cal.3d at p. 180, fn. 6.)

[14] We note that under Civil Code section 1431.2, liability for noneconomic damages "shall be several only and shall not be joint." (*Id.,* subd. (a).) That provision does not apply to the facts of this case; therefore, we have no occasion to consider any impact it might have on the rule we announce today.

### B. *Western's Proof of Damages*

■ The hospital further claims the trial court erroneously permitted Western to rely solely on the settlement amount rather than require independent evidence of Lennon's damages to establish its liability for indemnification. We agree with the basic premise underlying this argument, i.e., that a judgment cannot bind one who was not a party thereto. (Cf. *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 812 [122 P.2d 892].) Although the particulars may vary, a cognate principle governs in the case of an indemnity action following settlement: "The indemnitee's unilateral acts, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an opportunity to defend are the indispensable due process satisfying elements."[15] (*Jennings* v. *United States* (4th Cir. 1967) 374 F.2d 983, 986; cf. *Breese* v. *Price, supra,* 29 Cal.3d 923, 929.) Any other rule "would allow [the indemnitee] to spend [the indemnitor's] money without the final judgment of a court or [the indemnitor's] agreement." (*Tankrederiet Gefion A/S* v. *Hyman-Michaels Company* (6th Cir. 1969) 406 F.2d 1039, 1043-1044; see also *Breese* v. *Price, supra,* 29 Cal.3d at p. 931.)

In this case, we need not decide under what, if any, circumstances an indemnitee may in fairness and equity, and consistent with the obvious due process implications, invoke a reasonable good faith settlement as determinative of its rights against an indemnitor. (Cf. *Whisenant* v. *Brewster-Bartle Offshore Company* (5th Cir. 1971) 446 F.2d 394, 403; *Tankrederiet Gefion A/S* v. *Hyman-Michaels Company, supra,* 406 F.2d at pp. 1043-1044.) There is no dispute that the hospital was not a party to the Florida action, nor does the record show that the hospital received notice of the proposed settlement. Thus, there is no basis upon which to conclude that hospital could have protected its interests in the earlier proceeding. Nonetheless, the trial court essentially accepted the settlement amount as a reasonable basis for fixing its liability. Although the jury found the hospital 30 percent at fault, the critical question remained, "30 percent of what?" As the indemnity plaintiff, Western had the burden of proving not only the hospital's negligence but the amount of Lennon's resultant damages, including an allocation of economic and noneconomic loss. (*Sagadin* v. *Ripper, supra,* 175 Cal.App.3d at p. 1176;

---

[15]This situation is thus distinguishable from one in which a party seeks to utilize its good faith settlement as a shield to further liability. (Cf. *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at pp. 496-500.) When a party instead wields the settlement as a sword to enforce its rights as an indemnitee, due process mandates at a minimum appropriate notice and an opportunity for the indemnitor to contest both liability and the amount of damages. (See *Breese* v. *Price* (1981) 29 Cal.3d 923, 930-931 [176 Cal.Rptr. 791, 633 P.2d 987]; *Mullin Lumber Co.* v. *Chandler, supra,* 185 Cal.App.3d at p. 1134; *Sagadin* v. *Ripper, supra,* 175 Cal.App.3d at pp. 1175-1176.)

see *Breese* v. *Price*, *supra*, 29 Cal.3d at p. 931.) Accordingly, the Court of Appeal erred in concluding that substantial evidence of a reasonable settlement adequately established the proper amount of Western's recovery. To the extent the point remains relevant from the hospital's perspective in light of our resolution of the MICRA issue, the parties may reassert their respective arguments on the merits of this question for reconsideration on remand.[16]

## III. Disposition

The judgment of the Court of Appeal is reversed. The matter is remanded for further proceedings consistent with this opinion.

Lucas, C. J., Kennard, J., Baxter, J., George, J., and Cottle, J.,* concurred.

**MOSK, J.**—I dissent.

The Medical Injury Compensation Reform Act of 1975 (MICRA) limits the size of any award of *noneconomic* damages in an action for injury against a health care provider based on professional negligence. (Civ. Code, § 3333.2.) The Court of Appeal here held that the claim for indemnification sought only *economic* damages; therefore, the claim did not come within MICRA's express terms. The Court of Appeal also concluded that a "dispassionate reading" of MICRA showed that if the Legislature intended to apply the statute's limitations to actions for equitable indemnity it failed to do so either by word or context. Nonetheless, the majority gratuitously apply this limitation to the claim on the basis of a vague "broader examination" of whether the recovery was "appropriate under all relevant circumstances." (Maj. opn., *ante*, p. 107.)

A decade ago we reviewed a challenge to another section of this statute. I pointed out then that the section "benefit[ed] the wrongdoer at the expense of his victim . . . ." (*American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 387 [146 Cal.Rptr. 182, 578 P.2d 899] (dis. opn. of Mosk, J.).) In addition, I observed that the Legislature assumed in passing MICRA that an inevitable reduction of malpractice premiums paid by hospitals would result in a meaningful containment of hospital costs. Experience

---

[16]The hospital also contends on review that in allocating its portion of the damages the trial court did not give sufficient credit for Dr. Wirtschafter's $1 million settlement with Western. In light of its resolution of other issues, the Court of Appeal did not reach this contention. We therefore leave its determination in the first instance to the Court of Appeal on remand and express no opinion on its merits.

*Presiding Justice, Court of Appeal, Sixth Apellate District, assigned by the Acting Chairperson of the Judicial Council.

subsequent to the passage of MICRA sadly, but undeniably, demonstrated the error of this optimistic economic assumption. As a result I would have struck the statute down as unconstitutional.

I remain doubtful of MICRA's constitutional validity. Nothing before us in the ensuing decade has changed my view; therefore, I see no reason to extend the scope of the principles underlying this statute beyond the express reach of its terms. I would affirm the judgment of the Court of Appeal.

The petition of appellant Western Steamship Lines, Inc., for a rehearing was denied September 22, 1994, and the opinion was modified to read as printed above.