141 F.3d 1175
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Herbert EISENBRUCH, Plaintiff-Appellee,
v.
Burns International Security Services, Defenda
nt-counter-claim-defendant-Appellant,
v.
LOCH LOMOND MARINA, INC., Defendant-counter-claimant-Appellee.
COMMERCIAL UNION INSURANCE COMPANY, Plaintiff-Appellee,
Jerome C. FINCH, Plaintiff-counter-defendant-Appellee,
v.
Burns International Security Services, Defenda
nt-counter-claim-defendant-Appellee,
v.
LOCH LOMOND MARINA, INC., Defendant-counter-cl
aimant-counter-claimant-Appellant.
Jerome C. FINCH, In the matter of the complaint of Jerome C.
Finch, as owner of a 1976 43-foot Gulfstar motor
yacht named Anxiety, Reb. No. GFS432750776
Jerome C. FINCH, Plaintiff-Appellee,
Herbert EISENBRUCH, Plaintiff-Appellee,
v.
Burns International Security Services, Defenda
nt-counter-defendant-Appellant,
v.
LOCH LOMOND MARINA, INC., Defendant-cross-claimant-Appellee.
 
 No. 96-15612, 96-15438, 96-15440.
DC Nos.CV-94-03608-FMS CV-94-01269-FMS.
DC Nos.CV-94-04264-FMS CV-94-01269-FMS.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 12, 1998.
Decided Mar. 30, 1998.
 Appeal from the United States District Court for the Northern District of California Fern M. Smith, District Judge, Presiding.
 Before SCHROEDER, WIGGINS, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Burns International Security Systems, Inc. and Loch Lomond Marina, Inc. appeal the district court's judgment following an eight-day bench trial holding them liable for the destruction by fire of two vessels, the Anxiety and the Ironbrook, which were berthed at Loch Lomond Marina. This court has jurisdiction over these interlocutory appeals pursuant to 28 U.S.C. § 1292(a)(3).
 
 
 3
 The analysis of a maritime tort is guided by general principles of negligence law, and the district court may draw on state law in resolving maritime torts. See Exxon Co. v. Sofec, Inc., 517 U.S. 830, 116 S.Ct. 1813, 1818, 135 L.Ed.2d 113 (1996). In this case, the district court primarily applied principles of California state tort law.
 
 Burns' Appeal
 
 4
 Burns contends that the district court clearly erred in finding that Rodgers and Geier negligently or intentionally started the fire in the course of the burglary of the Anxiety. There was no clear error. The evidence supporting the district court's finding that Rodgers and Geier started the fire came from a number of sources. Rodgers eventually pled nolo contendere to other Marina burglaries. Two television sets taken from the Anxiety were recovered at Rodgers' apartment. There was circumstantial evidence that Rodgers and Geier were the last persons aboard the Anxiety before the fire. Geier admitted the burglary to a San Rafael Police Officer and stated that he lost the burning end of his cigarette while leaving the ship. A fire expert testified that the fire started in the galley area and was probably caused by intruders. Other vessels burglarized by Rodgers and Geier bore burn marks. The fire expert's testimony that the fire started in the "general vicinity" of under the galley sink is fully consistent with Geier's statement that he had been smoking in the galley area.
 
 
 5
 Burns next contends that the district court erred in shifting the burden of proof to Burns regarding the actual cause of the fire. Burns' theory was that an electrical malfunction at the Marina caused the fire, either as a result of problems with the Marina's electrical system or electrical work Finch had performed on the Anxiety.
 
 
 6
 The district court did not shift the burden of proof. The court explicitly found that Rodgers and Geier "more probably than not negligently or intentionally started the fire" aboard the Anxiety in the course of the burglary.
 
 
 7
 The district court did not err in admitting Geier's statement under Fed.R.Evid. 804(b)(3), the statement against interest exception to the hearsay rule. The parties stipulated that Geier was a fugitive and unavailable to testify. Second, Geier's statement was against his interest. Third, although Geier was in custody when he made the statement, Burns points to no evidence that Geier was attempting to "curry favor" with Officer Donahue, that he had been offered leniency for his testimony, or that he was attempting to trivialize his role and shift blame for the fire. See generally United States v. Beydler, 120 F.3d 985, 987 (9th Cir.1997) (setting forth relevant factors in determining whether third requirement has been satisfied).
 
 
 8
 The Confrontation Clause plainly does not apply in this civil proceeding in which neither Geier nor Rodgers is a party. See Austin v. United States, 509 U.S. 602, 608 n. 4, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (Confrontation Clause does not apply in civil cases).
 
 
 9
 Burns next contends that the district court erred in holding Burns vicariously liable for Rodgers' role in the burglary and fire because Rodgers acted outside the scope of his employment. This contention has merit. The district court held that Rodgers acted within the scope of his employment because of Rodgers' access to the vessels that was wholly dependent on his hiring; the court also reasoned that breach of trust was reasonably foreseeable in the security business. The court relied on Mary M. v. City of Los Angeles, 54 Cal.3d 202, 209, 285 Cal.Rptr. 99, 814 P.2d 1341 (1991), holding there was vicarious liability for a highway patrolman's rape of a motorist he had detained, where the detention was clearly within the course and scope of the officer's duties, and he was on duty at the time. The California Supreme Court reached a somewhat different result four years later in Lisa M. v. Henry Mayo Newhall Memorial Hosp., 12 Cal.4th 291, 295, 48 Cal.Rptr.2d 510, 907 P.2d 358 (1995), holding that a hospital technician's sexual assault on a patient was not within the scope of the technician's employment and there was no vicarious liability on the part of the hospital. In Van Ort v. Estate of Stanewich, 92 F.3d 831, 840 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 950, 136 L.Ed.2d 837 (1997), this court held that under California state law an employer could not be held vicariously liable for an assault committed by an off-duty police officer who forced his way into the victim's home.
 
 
 10
 Because the security guard in this case was not on duty at the time of the robbery and was hence not acting in the course and scope of his employment when he boarded the Anxiety, we conclude as in Van Ort, that there is no vicarious liability in this case for the damage caused by Burns' employees.
 
 
 11
 Burns contends that the district court erred in holding Burns liable for negligently hiring Rodgers and for failing to provide reasonable supervision to its guards. The district court's findings of fact are fully supported by the evidence. Two security experts testified that Burns did not use proper hiring practices, and Rodgers' own employment application contained numerous inconsistencies. Burns failed to check for convictions with the California Department of Corrections which would have alerted Burns to Rodgers' status as a paroled felon.
 
 
 12
 With respect to negligent supervision, the evidence showed that no supervisor ever visited Rodgers while he was on duty, and that Burns offered no training to its security guards on guarding marinas. Burns' security guard who was on duty the night of the fire failed to detect the burglary and did not detect the fire until after the police had arrived. A security expert testified that the guard's conduct was not reasonable to prevent the burglary or detect the fire.
 
 Loch Lomond's Appeal
 
 13
 Loch Lomond contends that the district court erred in holding it partially liable for the injury to the vessels on the ground it was negligent in not adequately supervising the guards provided by Burns. The evidence in the record supports the district court's finding that Loch Lomond staff directed many of the activities of the Burns guards.
 
 
 14
 Loch Lomond also contends the district court erred by shifting the burden of proof to Loch Lomond regarding the cause of the fire. As discussed above, the district court did not shift the burden of proof.
 
 
 15
 Loch Lomond asserts it is entitled to indemnity from Burns on three theories: First, Loch Lomond contends that because the district court erred in ruling that it shared liability with Burns for the fire, the district court also erred by denying it indemnity from Burns. Loch Lomond bases this argument on Owens v. Giannetta-Heinreich Constr. Co., 23 Cal.App.4th 1662, 1668, 29 Cal.Rptr.2d 11 (1994), a worker's compensation case which fails to support their argument, in that it concerns workers compensation damages. Moreover, California law states that "[o]ne who participates in the wrongful act which causes injury is not entitled to indemnity." See Smoketree-Lake Murray, Ltd. v. Mills Concrete Constr. Co., 234 Cal.App.3d 1724, 1739, 286 Cal.Rptr. 435 (1991) (citation omitted). Here, the district court properly concluded Loch Lomond was negligent along with Burns, and therefore denying indemnity to Loch Lomond was not erroneous. See Cahill Bros. Inc. v. Clementina Co., 208 Cal.App.2d 367, 377, 25 Cal.Rptr. 301 (1964) ("there is no right of indemnity in favor of a defendant who was himself negligent").
 
 
 16
 Loch Lomond contends that the district court was inequitable in holding it partially liable for the fire, because it played no active role in hiring the guard or in supervising Burns' employees the night of the accident. The district court found Loch Lomond was negligent, and California law no longer recognizes an active-passive distinction in applying indemnity. Rather, it looks to equitable and policy considerations, and the district court did not find that any existed here to support indemnification. See Western Steamship Lines, Inc. v. San Pedro Peninsula Hosp., 8 Cal.4th 100, 109, 32 Cal.Rptr.2d 263, 876 P.2d 1062 (1994).
 
 
 17
 Finally, Loch Lomond contends it was entitled to indemnity from Burns under a theory of implied contractual indemnity, in that the contract between Burns and Loch Lomond contained an implied promise that Burns would do the work involved in a proper manner. See Cahill Bros., 208 Cal.App.2d at 379, 25 Cal.Rptr. 301. However, this doctrine requires that the damages not flow from any negligence by the owner. See id. Accordingly, the district court did not err by denying Loch Lomond implied contractual indemnity after it concluded Loch Lomond was negligent.
 
 
 18
 The district court's ruling that Burns was vicariously liable for Rodgers' conduct is REVERSED. The judgment is otherwise AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3