Filed 5/26/16; pub. order 6/23/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SUKUM GOPAL et al., | B259808 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. VC059950) |
| v. | |
| KAISER FOUNDATION HEALTH PLAN, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert Ito, Judge.  Affirmed.

Steven B. Stevens, Steven B. Stevens; Heimberg Barr, Steven A. Heimberg, and Marsha E. Barr-Fernandez, for Plaintiffs and Appellants.

Horvitz & Levy, H. Thomas Watson, S. Thomas Todd; Carroll, Kelly, Trotter, Franzen, McKenna & Peabody, Michael J. Trotter, and Brenda Ligorsky for Defendant and Respondent.

_____

In this wrongful death and negligence action decedent Siasmorn Gopal (Gopal) was admitted to the emergency room at Kaiser Foundation Hospitals (Kaiser Hospitals) and died after she was transferred to another hospital. She was not a member of the Kaiser Foundation Health Plan (Health Plan). Appellants, Saismorn Gopal's husband and trustee of Gopal's estate, sued Kaiser Hospitals, Southern California Permanente Medical Group (SCPMG), Health Plan, and others, alleging that, in violation of California law, Kaiser Hospitals, SCPMG, and Health Plan treated Gopal differently than they would have treated a member and that the different treatment caused her death.

Here we are only concerned with the liability of Health Plan in whose favor the trial court granted summary judgment. On appeal, plaintiffs challenge the trial court's rejection of plaintiffs' enterprise theory of liability. Under this enterprise theory, Health Plan, Kaiser Hospitals and SCPMG formed a single enterprise, and Health Plan could be held liable for any breach of duty by Kaiser Hospitals or SCPMG because the three entities should legally be treated as a single entity. Because the trial court correctly rejected the enterprise theory of liability, we affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *Summary of Facts Preceding Lawsuit*

Health Plan is a health care service plan that exclusively contracts with Kaiser Hospitals and with SCPMG to provide health care to its members. Kaiser Hospitals also provide acute care to nonmembers who present in one of its emergency departments. Appellant Gopal was such an individual.

On November 13, 2010, at 12:03 a.m., Gopal, a 67-year old woman, called the paramedics because she was experiencing headache, nausea, vomiting and weakness. The ambulance transported her to the emergency medicine department at Kaiser Downey Hospital (Kaiser Downey), where she was admitted at 12:38 a.m. At 12:52 a.m., a Kaiser

---

[1] As an alternative ground for summary judgment, the trial court concluded that appellants' claims were barred as a matter of law because they were preempted by the Medicare Act and "impermissibly attack the management of . . . [H]ealth [P]lan." We need not reach this issue because we hold that the trial court properly granted Health Plan's summary judgment motion on other valid grounds.

2

Downey emergency medicine physician examined Gopal and ordered a series of laboratory and imagining tests, including a CT scan. Although Gopal had no signs of brain damage at that time, the emergency room physicians treating Gopal understood that she likely had a brain bleed, and that she would likely die or suffer severe brain damage if she did not receive emergency neurological care.

Prior to performing any tests, at 12:55 a.m., Gopal was asked about her insurance status, and it was noted in her chart that she was a nonmember of Health Plan and had assigned her Medicare benefits to CareMore, and therefore presented "financial" issues.

The CT scan, performed at 1:23 a.m., showed that Gopal had a large subarachnoid hemorrhage (brain bleed), which constituted a neurological emergency. Kaiser Downey, however, did not have neurological services, and, therefore, Gopal needed to be transferred to a facility that could treat her.

Kaiser Downey had certain protocols and procedures it implemented when it transferred patients based on its inability to treat them. These procedures were different for Health Plan members and nonmembers. In a neurological emergency, Health Plan members were transferred to a different facility of Kaiser Hospitals with an available neurosurgeon. An emergency medicine physician was required to contact directly the neurosurgeon at the different Kaiser Hospital and coordinate emergency transportation and neurological assistance to ensure timely services to members.

In contrast, for nonmember patients, instead of initiating transfer, their cases were given to a hospital case manager, who contacted the patient's insurance provider and asked for permission to transfer the patient. Once permission is granted, the nonmember's insurer is responsible for transfer and further care.

Gopal, as a nonmember, was treated under the procedures for nonmembers. Kaiser Downey staff contacted Gopal's insurer, CareMore, which determined that Gopal would be transferred to Lakewood Regional Medical Center (Lakewood), a CareMore-contracted facility, once a bed became available. Gopal waited multiple hours before being transferred, and once transferred, she did not receive the necessary surgery until

3

4:40 p.m., almost 15 hours after Kaiser Downey confirmed via CT scan results that Gopal had a neurological emergency.

Gopal died two days later. Gopal's board-certified neurosurgery expert testified that Gopal would not have died if she received prompt and proper neurological treatment.

B.     *Complaint*

The appellants alleged two causes of action in the third amended complaint (TAC) against Health Plan: wrongful death and negligence.[2]

C.     *Health Plan's Summary Judgment Motion*

In its summary judgment motion, Health Plan presented evidence that it, Kaiser Hospitals and SCPMG were three separate entities; that Gopal was not a Health Plan member; that no Health Plan employee had ever been contacted or had consulted regarding Gopal's care or treatment; that Health Plan did not direct or require health care providers at Kaiser Downey to deal with patients in any particular way but that those providers themselves decided how to treat patients by exercising their individual training and medical judgment in the course and scope of their employment by Kaiser Hospitals or SCPMG, not Health Plan. According to Health Plan, it is "well-settled that a health plan may **not** be held liable for the negligence of its contracted health care providers."

In opposition, plaintiffs did not dispute Gopal's nonmember status. They did not present evidence that directly contradicted Health Plan's factual assertions that Health Plan had no direct involvement with Gopal's care. Rather, they argued that Health Plan, Kaiser Hospitals and SCPMG "comprise one integrated, joint enterprise" that is "completely controlled by the entity with the money and power—[Health Plan]." Accordingly, under this theory of enterprise liability, Health Plan was liable for the acts and omissions of Kaiser Hospitals and SCPMG, its alleged enterprise's component parts.

The trial court granted Health Plan's summary judgment motion, rejecting plaintiffs' theory of enterprise liability.

---

[2]  Appellants also alleged causes of action against CareMore, CareMore Medical Group, Inc., Lakewood Medical Center, Kaiser Foundation Hospital, SCPMG, and other facilities, physicians and nurses. Those claims, however, are not at issue in this appeal.

4

Plaintiffs timely appealed.

## DISCUSSION

I.      *Standard of Review*

We review the trial court's ruling on a motion for summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.)

II.     *The Relevant Regulatory Framework*

The comprehensive statute that governs health care services in California is the Knox–Keene Health Care Service Plan Act of 1975 (Knox–Keene).  (Health & Saf. Code, § 1340 et seq.) [3]

A.      *Defining Health Care Service Plans and Health Care Providers*

Under Knox–Keene, respondent Health Plan is defined as a "[h]ealth care service plan," which is "[a]ny person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost for those services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees."  (§ 1345, subd. (f)(1).)

Health care service plans "are not health care providers under any provision of law," (Civ. Code, § 3428, subd. (c)), but "may employ, or contract with, any professional" licensed in the state.  (§ 1395, subd. (b).)

Under Knox–Keene, Kaiser Hospitals and SCPMG are "[p]rovider[s]," which are defined as "any professional person, organization, health facility, or other person or institution licensed by the state to deliver or furnish health care services."  (§ 1345, subd. (i).)

Pursuant to Knox-Keene, Health Plan, as a health care service plan, exclusively contracted with Kaiser Hospitals (a separate entity) and SCPMG (a separate entity) to be its providers.  (§ 1395, subd. (b).)

---

[3]  Unless otherwise noted, all statutory references henceforth are to the Health and Safety Code.

B.    *Duties under Knox–Keene*

Pursuant to Knox–Keene, Health Plan and its providers (Kaiser Hospitals and SCPMG) have duties to one another, to health care service subscribers (members) and Kaiser Hospitals and SCPMG have duties to nonmembers who seek emergency services in their emergency rooms.[4]

C.    *Liability under Knox–Keene*

Knox-Keene bars claims against a plan for vicarious liability, stating in relevant part: "A plan, any entity contracting with a plan, and providers are each responsible for their own acts or omissions, and are not liable for the acts or omissions of, or the costs of defending, others." (§ 1371.25.)

III.   *Health Plan Was Not Liable For Gopal's Treatment*

*Appellants' Theory of Enterprise Liability*

Appellants do not dispute Gopal's nonmember status or that Health Plan had no direct involvement with Gopal's care. Nor do the appellants dispute that section 1371.5 bars vicarious liability between health plans and providers. In an effort to avoid section 1371.5, however, appellants rely on an enterprise theory of liability, arguing that Health Plan, Kaiser Hospitals and SCPMG constitute a single enterprise, and, thus, Health Plan is liable for all acts and omissions of the other components of the enterprise. The trial court rejected this theory as a matter of law, and we agree that it fails.

Under California law, if the three entities are a single enterprise, they are each liable for all of the acts and omissions of the other components of the enterprise. (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1106-1107.) The doctrine of joint enterprise, or alter ego liability, is applied when

---

[4] For example, hospitals with emergency departments, like Kaiser Downey, are required to furnish emergency services to "any person requesting the services or care, or for whom services or care is requested, for any condition in which the person is in danger of loss of life, or serious injury or illness . . . when the health facility has appropriate facilities and qualified personnel available to provide the services or care." (§ 1317, subd. (a).) In addition, emergency services and care cannot be "based upon, or affected by, the person's . . . insurance status." (§ 1317, subd. (b).)

one corporation uses another to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose. In these situations, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation. (*Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 892.) "Because society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that imposition of alter ego liability be approached with caution." (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249 (*Las Palmas*).) Indeed, "the corporate form will be disregarded only in narrowly defined circumstances." (*Mesler v. Bragg Management Co*. (1985) 39 Cal.3d 290, 301; accord *Laird v. Capital Cities/ABC, Inc*. (1998) 68 Cal.App.4th 727, 737 ["[c]orporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result"], disagreed with on another ground in *Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 524.)

Two conditions are generally required for the application of joint enterprise liability: (1) such a unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another or the two companies form a single enterprise; and (2) an inequitable result if the acts in question are treated as those of one corporation alone. (*Las Palmas*, *supra*, 235 Cal.App.3d at pp. 1249-1250.) Based on these conditions, the joint enterprise doctrine is particularly inappropriate here.

As to the first condition, the unity of interests or ownership between Health Plan and its providers is authorized by Knox-Keene, which explicitly allows Health Plan to "directly own, and . . . directly operate" hospitals and contract with physicians to provide health care to its members. (§ 1395, subd. (c).) Indeed, this close relationship between Health Plan, Kaiser Hospitals and SCPMG is necessary for Health Plan to meet its obligations of a health plan to oversee and manage its providers per the statutory requirements of Knox-Keene.

7

As to the second condition, there is nothing inequitable in requiring Appellants to look to Kaiser Hospitals and SCPMG—the providers at issue—for compensation for their claims; appellants are not without recourse or remedy. Appellants, however, seek to hold Health Plan liable because it is not subject to the Medical Injury Compensation Reform Act of 1975 (MICRA) limitation of damages. (Civ. Code, § 3333.2.)[5] The fact that health care providers, and not health plans, are subject to MICRA is not an inequitable result, but a public policy determination made by the Legislature. (*Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 112, opn. mod. rehg. den. Sept. 22, 1994 ["MICRA thus reflects a strong public policy to contain the costs of malpractice insurance by controlling or redistributing liability for damages, thereby maximizing the availability of medical services to meet the state's health care needs."].)

Accordingly, appellants' reliance on the enterprise theory is unavailing.[6]

---

[5] Appellants noted in their opposition to Health Plan's summary judgment motion before the trial court that they sought non-MICRA damages from Health Plan because MICRA was "never extended, and was never intended to extend, to health care service plans."

[6] We need not reach the issue of Medicare preemption because we hold that the trial court properly granted Health Plan's summary judgment motion based on its rejection of plaintiffs' enterprise theory of liability.

**DISPOSITION**

The judgment is affirmed.  The parties shall bear their own costs on appeal.


                                                    ROTHSCHILD, P. J.

We concur:


CHANEY, J.


JOHNSON, J.

Filed 6/23/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SUKUM GOPAL et al., | B259808 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. VC059950) |
| v. | ORDER CERTIFYING THE OPINION FOR PUBLICATION |
| KAISER FOUNDATION HEALTH PLAN, INC., | |
| Defendant and Respondent. | |

THE COURT:

The opinion in the above-entitled matter filed May 26, 2016, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

    ROTHSCHILD, P. J.              CHANEY, J.              JOHNSON, J.