Filed 8/21/24  Reyes v. Kizh Nation Resources Management CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| EMILIO REYES,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>KIZH NATION RESOURCES MANAGEMENT,<br><br>　　Defendant and Respondent. | B329178<br><br>(Los Angeles County Super. Ct. No. BC724250) |

　　APPEAL from a judgment of the Superior Court of Los Angeles County, Mel Red Recana and Robert B. Broadbelt, Judges.  Affirmed.

　　Emilio Reyes, in pro. per., for Plaintiff and Appellant.

　　Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, Kevin R. Lussier and Katy S. Bekken for Defendant and Respondent.

_____

Emilio Reyes appeals from a judgment following the trial court's grant of summary judgment for defendant Kizh Nation Resources Management (KNRM) on the ground that KNRM could not be held liable as a matter of law for the actions taken by codefendant Andrew Salas on an alter ego theory based on Salas's position as president and chief executive officer of KNRM, and as part of a joint enterprise with codefendant Los Indios De San Gabriel, Inc. doing business as the Gabrieleno Band of Mission Indians-Kizh Nation (Los Indios).  Reyes brought causes of action against Salas, Alexandra R. McIntosh, APC (Reyes's former attorney), Lorraine Ann Escobar (a genealogist who worked for Los Indios and Salas), KNRM, Los Indios, and others for negligence, defamation, invasion of privacy, intentional infliction of emotional distress, unfair business practices, and other torts based on allegations Salas participated in a scheme by McIntosh and Escobar to obtain confidential information from Reyes about his Native American ancestry and to use it to publish defamatory reports falsely stating Reyes's ancestors were of Spanish or Mexican, not Native American, ancestry.  Reyes alleged that some of the reports were published on Los Indios's website.

Reyes also argues that the trial court abused its discretion in denying Reyes leave to amend to allege additional causes of action against KNRM.  Because Reyes failed to produce any evidence to support KNRM's liability for the conduct of Salas or Los Indios on an alter ego or joint enterprise theory, and the court did not abuse its discretion in denying leave to amend, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.  *Reyes's Allegations in the Second Amended Complaint*

Reyes commenced this action on October 4, 2018. On August 13, 2021 Reyes filed a second amended complaint against Escobar, individually and doing business as No Stone Unturned Genealogy, McIntosh, Salas, Los Indios, KNRM, Board for Certification of Genealogists (the Board), and others. Reyes alleged he is a descendant of the Gabrielino (Tongva) Nation and a genealogist and researcher of Native American records. According to Reyes, his ancestor Maria Guadelupe Arballo Grijalva and her descendants Mary Grijalva Bega, Guillermo Grijalva, Aurelia Grijalva Orosco, Domingo Bega, Mary Bega Aguilar, Nellie Bega Medrano, and Amelia Grijalva Garcia "appear on the original California Indian Census Roll authorized by Congress in 1928, and approved by the Secretary of the Interior in 1933."

Escobar is a genealogist certified by the Board, who worked for Salas "as an independent genealogical consultant" since 2009. On November 11, 2013 Reyes sent Escobar an email requesting her genealogical services. At Escobar's request, Reyes provided her with his full genealogy. Starting at the end of 2013, Reyes communicated with Salas, the chief executive officer of KNRM and Los Indios, about becoming a member of Los Indios. Salas sent Reyes an application and requested that Reyes send supporting documents along with his application. According to Reyes, the application contained a confidentiality agreement stating Salas and Los Indios "would maintain all obtained records and information confidential." In early 2014 Reyes submitted his application and $30 filing fee to Los Indios, but

3

later that year Reyes requested that Los Indios return all his paperwork. Los Indios responded that it would return Reyes's application and his $30 fee, but it never did. Los Indios later informed Reyes that Escobar was its genealogist and Los Indios was "'not able to match any of [Reyes's] family members up to our current certified genealogy database.'" Reyes alleged that Escobar and Salas collected Reyes's genealogy documents under false pretenses with the intent to later accuse him of pretending to have Native American ancestry.

In January 2015 McIntosh agreed to represent Reyes as a plaintiff in a lawsuit against the Bureau of Indian Affairs (BIA) seeking federal recognition of members of the San Pasqual Band of Mission Indians. At McIntosh's request, Reyes provided her with a statement from the BIA verifying Reyes's California Indian ancestry.[1] On August 31, 2017 McIntosh sent Reyes's BIA document to Escobar. On October 13 Escobar published a report about Reyes's ancestors on the Los Indios website that included the BIA document and genealogical information Reyes sent to Escobar and Los Indios. The report also was sent to the Department of Interior, the BIA, and the Native American Heritage Commission (NAHC). The report accused Reyes of having a fraudulent BIA document that showed he had Native American ancestry although his ancestors were of Spanish descent (from Mexico). Reyes alleged the report violated his privacy, contained unlawfully obtained confidential information, and was libelous on its face because the BIA had acknowledged since 2013 that Reyes was a California Indian. After Reyes

---

[1] Reyes refers to the document as a certificate degree of Indian blood (CDIB) issued by the BIA.

4

commenced this action, Los Indios removed the full report but left the first page on its website with the statement: "[F]or the complete factual information of these infiltrators, please feel free to contact us."

Reyes further alleged that on June 26, 2018 Escobar, at the request of Salas, sent false and misleading statements to NAHC and five Native American tribes accusing Reyes of being an "imposter" and practicing "cultural misappropriation," and Escober urged NAHC and the tribes to "not lend any credibility to these imposters." On July 9, 2020 Escobar, at Salas's request, published another report about Reyes's genealogy accusing Reyes of "cultural identity fraud" and defrauding the government because Reyes's ancestors were from Mexico and Reyes had "absolutely no California Indian ancestry at all." Reyes alleged Escobar's publications about Reyes "were made per the request of Salas of Los Indios and KNRM." (Capitalization omitted.)

Reyes alleged 12 causes of action against Salas, Los Indios, KNRM, and others for negligence, defamation, invasion of privacy, unfair business practices in violation of the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) and Business and Professions Code section 17200 et seq., intentional and negligent infliction of emotional distress, violations of Reyes's rights under article 1, section 2(a) of the California Constitution, discrimination in violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.), civil conspiracy, concealment, unjust enrichment, and breach of fiduciary duty. Reyes sued KNRM as the alter ego of Salas and Los Indios, and alleged there was a unity of ownership and interest among them. Reyes sought damages of $5 million against Salas, $5 million against Los Indios, and $1 million against KNRM.

B.    *KNRM's Motion for Summary Judgment*

On June 10, 2022 KNRM moved for summary judgment or, in the alternative, summary adjudication.  KNRM argued it was not the alter ego of Salas and it did not ratify or authorize any of Salas's alleged actions, relying on a declaration submitted by Salas.

In his supporting declaration, Salas stated he is the president and chief executive officer of KNRM.  According to Salas, KNRM is a for-profit California corporation that "provides professional services that implement mitigation measures adopted by government entities for land use development projects they find will negatively impact Native Americans, cultural, and natural resources at a project location."  KNRM is neither a California government entity nor a Native American tribe or tribal government.  Salas denied the tribal council for the Gabrieleno Band of Mission Indians-Kizh Nation ever did business as KNRM.[2]  Salas averred that KNRM never commingled funds with Salas or any other entity or individual.  Further, "KNRM does not divert corporate funds or assets away from KNRM for purposes other than KNRM corporate purposes.  KNRM's corporate assets are those of the corporation, KNRM, and no other entity or individual, including me, and are treated as such.  KNRM is not a shell for the business of an individual or other corporation."

Salas also declared that KNRM never had any contact with or was involved with Reyes and did not obtain any of Reyes's

---

[2]    Reyes sued KNRM as a "dba" for the Tribal Council for the Gabrieleno Band of Mission Indians-Kizh Nation.  KNRM argued that it was erroneously sued in this manner because the tribal council never did business as KNRM.

genealogical documents or personal records.  Further, KNRM never requested that Escobar or anyone else publish or distribute any statement about Reyes to any government entity or tribe.  Nor did KNRM ever disclose, publish, or disseminate any statement or report related to Reyes or his relatives.  Moreover, KNRM never authorized anyone, including Salas, to engage in any wrongful conduct as alleged by Reyes in his second amended complaint.

Salas attached to his declaration KNRM's April 17, 2017 articles of incorporation and March 15, 2022 corporation statement of information filed with the California Secretary of State.  The articles of incorporation show that the Gabrieleno Band of Mission Indians, LLC converted to KNRM, a corporation, by vote of its members.  The document listed Salas as "the sole manager of the LLC" and the "initial" agent for service of process.  The corporation statement of information listed Salas as KNRM's chief executive officer, chief financial officer, director, and agent for service of process.  It also listed Laura Salas as secretary and noted there were two vacancies on the board of directors.

C.      *Reyes's Motion for Leave To File a Third Amended Complaint*

On June 20, 2022 Reyes moved for leave to file a third amended complaint.  Reyes sought to amend the complaint to add causes of action for conversion, aiding and abetting, malicious prosecution, and abuse of process and to remove the cause of action for negligent handling of legal matter.  Reyes also sought to remove the Board and Joseph Villalobos as defendants named in the complaint.  In his supporting declaration, Reyes explained he was "seeking leave to amend to include four additional causes

7

of action arising from the same general facts and recently discovered information." Reyes argued the defendants would not be prejudiced by the proposed amendments.

In opposition, KNRM argued the trial court should deny the motion because of Reyes's unreasonable delay in seeking leave to amend to add causes of action that Reyes admitted arose from the same general sets of facts contained in Reyes's second amended complaint. KNRM also argued it would be prejudiced by the amendments because a third amended complaint would moot KNRM's summary judgment motion, delay trial, and increase its discovery burden.

On July 12, 2022 the trial court[3] denied Reyes's motion without prejudice. The court agreed with KNRM that the summary judgment motion "should be allowed to proceed and not be mooted." The court explained, "[Reyes] should not be precluded from seeking leave to amend after the summary judgment hearing. The court will consider then if leave to amend is proper, which will require [Reyes] to show that his proposed amendments present viable claims and that good cause exists for bringing the claims. In the event that summary judgment is granted, [Reyes] may move *ex parte* for leave to amend before entry of judgment."

D.      *Reyes's Opposition to the Summary Judgment Motion*

In his October 2022 opposition to KNRM's motion, Reyes argued KNRM failed to make a prima facie showing sufficient to shift the burden to Reyes on the alter ego allegations because Salas's declaration was "inconsistent, unsupported[,] and

---

[3]      Judge Mel Red Recana.

8

insufficient to meet its burden." Reyes argued KNRM was liable for the actions of Salas and Los Indios. He asserted there was a unity of interest and ownership between KNRM and Los Indios given that they have the same business address, Los Indios provides monitoring services for KNRM, and both entities are controlled by Salas. Reyes also argued he had established triable issues of material fact for each of the 12 causes of action.

In his declaration, Reyes stated he is a genealogist and researcher.[4] Further, Reyes is "a Native American affiliated with the Gabrielino and Diegueño tribes" with "expert knowledge of the histories of the Southern California Indian tribes." Reyes stated that in 2013 Salas communicated with Reyes and received documents from him. Further, "KNRM published my documents, reports, and/or records about me on their website."[5] Reyes declared, "As a result of the breach that led to the seven false and unprivileged publications, I have been censored and/or discriminated against my speech simply for identifying as a California Indian. KNRM framed me as an 'imposter' to restrict

---

[4] The trial court sustained many of KNRM's evidentiary objections to Reyes's declaration and exhibits. Because Reyes does not challenge the court's evidentiary rulings on appeal, he has forfeited any challenge to the correctness of the trial court's rulings. (*Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1197; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.) We therefore consider only the portions of Reyes's declaration and the exhibits that were admitted.

[5] Reyes attached as an exhibit two pages from the Los Indios website discussing his ancestor Grijalva, but he did not attach pages from the KNRM website discussing Reyes or his other ancestors. Reyes on appeal does not contend KNRM should be held liable based on the alleged publication on its website.

9

me from free speech.  I have turned down various requests for public participation due to fear and/or embarrassment. Furthermore, I do not feel 100 percent free to practice my religi[ous] faith or participate at certain public events where my tribe is invited and/or involved due to fear that KNRM or their allies will be present.  In the past, certain agents and/or allies of KNRM have showed-up to protest other relatives when invited to publicly speak on behalf of our tribe.  They have also been framed as 'imposters.'"

Reyes also argued in his declaration that KNRM's summary judgment motion was premature because discovery was ongoing and, despite Reyes's diligent efforts, he had only obtained three KNRM documents.[6]

Reyes filed numerous exhibits in support of his opposition to the summary judgment motion.  He included a September 22, 2020 declaration from Matthew Teutimez, KNRM's environmental compliance director and a member of its board of directors, which had previously been submitted by KNRM in opposition to Reyes's request for a temporary restraining order and issuance of an order to show cause re: preliminary injunction. Teutimez stated in his declaration that the tribal council for the Gabrieleno Band of Mission Indians-Kizh Nation "established KNRM to create a for-profit business to handle all aspects of cultural and natural resource management for the Tribe." According to Teutimez, "KNRM provides professional

---

[6]     Although Reyes asserted KNRM's summary judgment motion was "premature," he did not move for a continuance of the summary judgment hearing to enable him to take additional discovery pursuant to Code of Civil Procedure section 437c, subdivision (h).

environmental project compliance support" and its "services provide the compliance required by [the California Environmental Quality Act] for mitigation and/or conditions for approval for a multitude of development projects within the Los Angeles Basin." Teutimez denied KNRM had any "affiliation with the gabrielenoindians.net website" or that KNRM ever requested Escobar "to prepare genealogical reports." Teutimez added, "KNRM was not involved in the preparation and/or distribution of any of the genealogical reports" relating to Reyes.

Reyes also included KNRM's corporation statement of information filed on February 8, 2022 with the California Secretary of State in which KNRM is identified as a corporation with Salas as the chief executive officer, secretary, chief financial officer, director, and agent for service of process. In addition, Reyes provided screenshots of KNRM's social media accounts; however, none referenced Reyes or his relatives. Reyes also submitted an April 28, 2017 indemnity agreement, in which the Gabrieleno Band of Mission Indians-Kizh Nation stated that KNRM was established on April 17, 2017 by the tribe and that the tribe agreed to "fully indemnify, hold harmless and defend KNRM and its directors, officers, employees, agents, stockholders and affiliates from and against all claims, demands, actions, suits, damages, liabilities, losses, settlements, judgment, costs and expenses (including but not limited to reasonable attorney's fees and costs), whether or not involving a third party claim, which arise out of or relate to any act or omission of Kizh Nation Resources Management."

Among the many documents Reyes submitted with his opposition were two screenshots of the Los Indios website, in which Maria Grijalva (Reyes's ancestor) and 12 other individuals

11

are identified as imposters who are not Gabrieleno Indians; a June 26, 2018 letter from Escobar to NAHC in which Escobar accused Reyes and nine other individuals of cultural misappropriation; a redacted October 13, 2017 report by Escobar challenging the 1928 enrollment of Grijalva and her two siblings as California Indians; a redacted October 13, 2017 letter from Escobar to the BIA seeking correction of BIA's 1928 enrollment data "to stop the identity theft"; a redacted October 23, 2017 letter from Escobar to the BIA that accused Reyes of "possible fraud" against the BIA "by providing spurious documentation or information, to obtain BIA-issued certification that he was descended from Gabrieleno Indians"; and a redacted July 9, 2020 genealogical report by Escobar about Reyes and his ancestors. Reyes also submitted Escobar's cross-complaint against Reyes, in which she alleged that since 2009 Salas had hired Escobar "to research and write genealogical reports on various individuals who falsely claim a Gabrieleno Indian ancestry, including cross-defendant Emilio Reyes." (Capitalization omitted.)

E.      *The Trial Court's Summary Judgment Ruling and Judgment*

On December 13, 2022 the trial court[7] granted KNRM's motion for summary judgment. The court found KNRM met its burden of demonstrating that Reyes's claims lacked merit because KNRM was not the alter ego of Salas or Los Indios and did not ratify or authorize any of Salas's alleged actions. The court also found Reyes failed to establish a triable issue of material fact with respect to KNRM's commingling of funds or

---

[7]      Judge Recana.

12

assets with Salas or Los Indios. The court explained that Reyes's conclusory statement that KNRM commingled funds with Salas and Los Indios was not evidence of commingling because Reyes did not establish he had any personal knowledge of KNRM's corporate funds and assets or how they were handled.[8] Further, Teutimez's declaration did not support any of Reyes's "statements regarding KNRM and its corporate funds/assets on the issue [of] alter ego liability." The court noted that Reyes failed to point to any documents "that would allow him to personally establish facts pertaining to KNRM and its corporate funds/assets in connection with alter ego liability." Moreover, Reyes failed to cite to any competent evidence that the tribal council was doing business as KNRM. The court explained, "The fact that the Tribal Council established KNRM does not show that KNRM is necessarily a 'dba' of the Tribal Council or that they are actually the same entity."

The trial court also found Reyes failed to present competent evidence to establish a triable issue of material fact with respect to KNRM's ratification or authorization of Salas's actions. The court reasoned, "The fact that Salas had interactions with [Reyes] does not, in itself, demonstrate that Salas was doing so on behalf of KNRM. Salas could have been interacting with [Reyes] for any number of reasons that had nothing to do with Salas's alleged capacity as KNRM's representative." Moreover, the indemnity

---

[8] Although the trial court referenced Reyes's assertion in his declaration that KNRM had commingled funds with Salas and Los Indios, the court earlier had sustained KNRM's evidentiary objection to the statement based on Reyes's lack of personal knowledge and lack of foundation.

13

agreement did not support a finding that KNRM was "an alter ego when KNRM did not agree to indemnify anyone."

On March 9, 2023 the trial court[9] entered a judgment in favor of KNRM and against Reyes. The judgment dismissed KNRM from the action and ordered that Reyes take nothing as to KNRM.

Reyes timely appealed.

## DISCUSSION

A. *The Trial Court Properly Granted KNRM's Motion for Summary Judgment*

1. *The standard of review*

Summary judgment is appropriate only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c);[10] *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 668.) "'"""We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; accord, *Doe*, at p. 669.)

---

[9] Judge Robert B. Broadbelt.

[10] Further undesignated statutory references are to the Code of Civil Procedure.

14

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense.  (§ 437c, subd. (p)(2); *Regents of University of California v. Superior Court*, *supra*, 4 Cal.5th at p. 618; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.)  If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact.  (§ 437c, subd. (p)(2); *Aguilar*, at p. 850.)  "The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show . . . a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists."  (§ 437c, subd. (p)(2); accord, *Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040, 1054 ["It is fundamental that to defeat summary judgment a plaintiff must show 'specific facts' and cannot rely on allegations of the complaint."].)

2. *The alter ego and joint enterprise theories of liability*

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests.  [Citation.] In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation:  'As the separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted.  When it is abused it will be disregarded and the corporation looked at as a collection or association of individuals, so that the corporation will be liable for acts of the stockholders or the stockholders liable for acts done

15

in the name of the corporation.'" (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300; accord, *Lopez v. Escamilla* (2022) 79 Cal.App.5th 646, 650 ["Under the alter ego doctrine, the corporate veil may be lifted to show the corporate form is a fiction and determine who controls the corporate entity and who is liable for its debts."].)  "Whether to invoke alter ego liability depends on both: (1) 'such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist,' and (2) whether 'adherence to the fiction of separate existence would, under the circumstances, promote fraud or injustice.'" (*Kao v. Joy Holiday* (2020) 58 Cal.App.5th 199, 205; accord, *Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 848-849 (*Blizzard Energy*).)

"'The alter ego test encompasses a host of factors: "[1] [c]ommingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses . . . ; [2] the treatment by an individual of the assets of the corporation as his own . . . ; [3] the failure to obtain authority to issue stock or to subscribe to or issue the same . . . ; [4] the holding out by an individual that he is personally liable for the debts of the corporation . . . ; the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities . . . ; [5] the identical equitable ownership in the two entities; the identification of the equitable owners thereof with the domination and control of the two entities; identification of the directors and officers of the two entities in the responsible supervision and management; sole ownership of all of the stock in a corporation by one individual or the members of a family . . . ; [6] the use of the same office or business location; the

16

employment of the same employees and/or attorney . . . ; [7] the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization . . . ; [8] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation . . . ; [9] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities . . . ; [10] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities . . . ; [11] the use of the corporate entity to procure labor, services or merchandise for another person or entity . . . ; [12] the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another . . . ; [13] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions . . . ; [14] and the formation and use of a corporation to transfer to it the existing liability of another person or entity." . . . [¶] This long list of factors is not exhaustive. The enumerated factors may be considered "[a]mong" others "under the particular circumstances of each case."'" (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811-812; accord, *Kao v. Joy Holiday, supra*, 58 Cal.App.5th at p. 206.)

With respect to a corporation's liability for the acts of another company, courts have applied a variation of the alter ego doctrine, typically referred to as the joint enterprise or single-business-enterprise theory of liability. "'The "single-business-

17

enterprise" theory is an equitable doctrine applied to reflect partnership-type liability principles when corporations integrate their resources and operations to achieve a common business purpose.'" (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1108 (*Toho-Towa*); accord, *Gopal v. Kaiser Foundation Health Plan, Inc.* (2016) 248 Cal.App.4th 425, 431 ["Under California law, if the three entities are a single enterprise, they are each liable for all of the acts and omissions of the other components of the enterprise."].) "[W]here there is 'such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal' [citation], the affiliated corporations may be deemed to be a single business enterprise, and the corporate veil pierced." (*Toho-Towa*, at p. 1107.) The factors for joint enterprise liability are the same as the alter ego test. (*Gopal*, at p. 431 ["The doctrine of joint enterprise, or alter ego liability, is applied when one corporation uses another to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose."]; *Toho-Towa*, at pp. 1108-1109 ["'Factors for the trial court to consider include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other.'"].)

> 3. *KNRM met its burden to show Reyes could not establish liability based on an alter ego or joint enterprise theory*

"In assessing the propriety of summary judgment, we look first to . . . [the] allegations in the operative complaint, which

18

frame the issues pertinent to a motion for summary judgment." (*Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41; accord, *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 ["The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.'"]; *Ahn v. Stewart Title Guaranty Co.* (2023) 93 Cal.App.5th 168, 181 ["the pleadings frame the issues on a motion for summary judgment"].)

In the operative second amended complaint, Reyes alleged KNRM was being sued as the alter ego of Salas and Los Indios. By seeking to hold KNRM responsible for the acts of Salas, Reyes is alleging liability against KNRM based on what courts refer to as "reverse veil piercing." (*Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 221 ["Rather than seeking to hold an individual responsible for the acts of an entity, reverse veil piercing seeks to satisfy the debt of an individual through the assets of an entity of which the individual is an insider."]; see *Blizzard Energy, supra*, 71 Cal.App.5th at p. 840 [same].)

But "a third party creditor may not pierce the corporate veil to reach corporate assets to satisfy a shareholder's personal liability." (*Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1512-1513 (*Postal Instant Press*); accord, *Wise v. DLA Piper LLP (US)* (2013) 220 Cal.App.4th 1180, 1193 ["the law precludes the Wises from employing 'reverse piercing' to obtain funds paid by third party investors into Cheng's corporate entities to satisfy Cheng's personal debts"]; cf. *Curci Investments, LLC v. Baldwin, supra*, 14 Cal.App.5th at pp. 222-223 [applying reverse veil piercing to a limited liability corporation because "*Postal Instant Press* was expressly limited to corporations," there

19

were no innocent shareholders affected by reverse veil piercing, and creditors had limited judgment collection procedures]; *Blizzard Energy, supra*, 71 Cal.App.5th at pp. 840-841, 847 [remanding for trial court to consider whether reverse veil piercing should apply to a limited liability company in which defendant and his wife each owned 50 percent of the company, and wife was not part of the fraud].)

As the Court of Appeal explained in *Postal Instant Press, supra*, 162 Cal.App.4th at page 1513, in declining to apply reverse veil piercing to the defendant corporation, "Outside reverse piercing can harm innocent shareholders and corporate creditors, and allow judgment creditors to bypass normal judgment collection procedures. Legal theories (such as agency or respondeat superior) and legal remedies (such as claims for conversion or fraudulent conveyance) adequately protect judgment creditors without the need to distort theories of corporate liability." We similarly have serious concerns about application of the doctrine to impose liability on KNRM, which, like the defendant in *Postal Instant Press*, is a corporation.[11]

Even assuming reverse veil piercing could be applied to hold KNRM liable for Salas's acts, KNRM met its burden to negate Reyes's theory of liability based on alter ego (for the acts of Salas) or the joint enterprise doctrine (based on the acts of Los Indios). (See *Ahn v. Stewart Title Guaranty Co., supra*, 93 Cal.App.5th at p. 182 ["'[T]he burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability as *alleged in the complaint*; that is,

---

[11] The parties have not addressed reverse veil piercing, either in the trial court or on appeal, instead focusing on the factors under traditional alter ego liability principles.

20

a moving party need not refute liability on some theoretical possibility not included in the pleadings.'"]; *White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 354 [same].)

KNRM acknowledges that Salas is the president and chief executive officer of KNRM and owns shares in the corporation. But Salas stated in his declaration that (1) "KNRM does not engage in the commingling of funds or assets with any other entity or individual, including me as an individual"; (2) KNRM does not use corporate funds or assets for "purposes other than KNRM corporate purposes"; (3) KNRM's corporate assets belong to the corporation and not Salas or any other individual; and (4) "KNRM is not a shell for the business of an individual or other corporation." These averments are sufficient to shift the burden to Reyes to show there are triable issues of fact.

### 4. *Reyes failed to raise a triable issue of fact that KNRM is liable as the alter ego of Salas or Los Indios*

Reyes contends he raised triable issues of fact with respect to KNRM's alter ego liability.[12] He has not submitted sufficient

---

[12] On November 8, 2023 Reyes filed a request for judicial notice of 26 documents (Exhibits AA to ZZ) that he did not present in the trial court. We deny Reyes's request because he did not request judicial notice in the trial court. (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325-326 ["An appellate court may properly decline to take judicial notice under Evidence Code sections 452 and 459 of a matter which should have been presented to the trial court for its consideration in the first instance."]; *Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1306-1307 ["a reviewing court will ordinarily not consider on appeal matters that were not presented to the trial court when it made the challenged ruling,

relevant evidence to create a triable issue of fact. Reyes points to the undisputed fact that KNRM and Los Indios share the same business address in Covina. It is similarly undisputed that Salas is the chief executive officer of both KNRM and Los Indios. And Salas is KNRM's secretary, chief financial officer, director, and agent for service of process. However, Laura Salas is KNRM's secretary (with two vacant director positions), and Los Indios's November 14, 2020 corporation statement of information listed other individuals as Los Indios's secretary, chief financial officer, and agent for service of process.[13] Reyes also relies on the following: KNRM and Los Indios have the same type of business; the two corporations have similar names; Salas controlled the litigation decisions for both KNRM and Los Indios; Salas, KNRM, and Los Indios share the same insurance provider; and KNRM and Los Indios improperly invoked sovereign tribal immunity as an affirmative defense.

Of these facts, only two are relevant to the alter ego analysis: (1) Salas is the CEO and an officer of the two corporations, and (2) the two corporations use the same business address. However, these two factors alone, without any showing of corporate impropriety or commingling of funds, do not show "there is 'such domination of finances, policies and practices that

___

including matters of which an appellate court may take judicial notice under Evidence Code section 459"].) Similarly, we deny Reyes's March 11, 2024 supplemental request for judicial notice of 10 documents (Exhibits AA1 to AA10) that Reyes likewise failed to submit in the trial court.

[13] Reyes argues that Salas is the sole owner of both KNRM and Los Indios, but he failed to present evidence in the trial court that Salas wholly owned either corporation.

22

the controlled corporation has, so to speak, no separate mind, will or existence of its own,'" but rather, is a "business conduit" for the affiliated company. (*Toho-Towa, supra*, 217 Cal.App.4th at p. 1107.) Moreover, with respect to the fact Salas is the CEO and an officer of KNRM and Los Indios, it is notable that both KNRM and Los Indios have other officers and directors. (See *Toho-Towa*, at pp. 1108-1109 [alter ego factors "include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, *identical directors and officers*, and use of one as a mere shell or conduit for the affairs of the other"], italics added].).

Toho-Towa* is instructive. There, the Court of Appeal found substantial evidence supported the trial court's joint enterprise finding because the three "entities were all owned all by the same person, who was the sole decision maker for all of the . . . entities; the three entities exploited the same assets;" the same employees performed the work for all three entities; and payment to one entity was transferred directly to the second entity's lender. (*Toho-Towa Co.*, *supra*, 217 Cal.App.4th at p. 1109.) Unlike *Toho-Towa*, there is no evidence that Salas wholly owned KNRM and Los Indios or that he was the sole decisionmaker for both corporations. Nor is there evidence that KNRM and Los Indios shared the same assets or employees.

With respect to the commingling of funds, Reyes does not challenge the trial court's exclusion of his conclusory statements in his declaration that KNRM commingled funds with Salas and other entities; KNRM used the funds for non-corporate purposes; and KNRM is "a shell" for Los Indios. Moreover, he does not present any competent evidence that KNRM commingled funds

23

with Salas or Los Indios. As evidence of commingling of funds, Reyes points to the June 6, 2010 minutes of the meeting of the tribal council of the Gabrieleno Band of Mission Indians, in which under the heading "*Monitoring*," the minutes reflect that Salas suggested a 50 percent "donation to be given back to the tribe." The trial court took judicial notice that the Department of Interior produced the tribal council's meeting minutes in response to Reyes's Freedom of Information Act request; however, the court did not take judicial notice of the truth of the matters asserted in the document. (Evid. Code, § 452, subd. (c); *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 ["While courts may notice official acts and public records, 'we do not take judicial notice of the truth of all matters stated therein.'"], overruled on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.) In any event, the June 2010 tribal council meeting minutes do not mention either KNRM or Los Indios. It is not clear, therefore, whether the donation to a "tribe" was intended to go to Los Indios and whether the donation would come from KNRM's profits, as argued by Reyes.

Reyes also contends KNRM, through Salas, misrepresented its personal and business activities. Reyes claims Salas intentionally misrepresented to the public that the business purpose of both KNRM and Los Indios was "tribal monitoring," but in fact, "Salas'[s] activities [had] nothing to do with the corporations['] stated goals." In addition, Reyes maintained that KNRM and Los Indios were created in 2009 and 2010, but Salas falsely stated they were established in 1994. Neither alleged fact is evidence that KNRM concealed Salas's personal business activities. Reyes does not address on appeal any of the remaining alter ego factors. Because Reyes failed to present evidence

24

creating a triable issue of fact showing KNRM was liable as the alter ego of Salas or Los Indios, the trial court properly granted summary judgment for KNRM.

B. *The Trial Court Did Not Abuse Its Discretion in Denying Reyes's Motion for Leave To Amend*

"[S]ection 576 allows a judge to amend a pleading 'at any time before or after commencement of trial, in the furtherance of justice, and upon such terms as may be proper.'" (*McMillin v. Eare* (2021) 70 Cal.App.5th 893, 910, italics omitted; see § 473, subd. (a)(1) ["The court may, in furtherance of justice, and on any terms as may be proper, allow a party to amend any pleading . . . ."].) "Denial of leave to amend a complaint is an abuse of discretion unless the complaint shows on its face that it is incapable of amendment to state a viable cause of action." (*Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1385; see *City of Torrance v. Southern California Edison Co.* (2021) 61 Cal.App.5th 1071, 1091 ["'The policy favoring amendment is so strong that it is a rare case in which denial of leave to amend can be justified.'"].)

Reyes contends the trial court abused its discretion in denying him leave to amend his second amended complaint given the policy favoring amendment. But Reyes asserted the same theory of liability against KNRM in his proposed third amended complaint by alleging that KNRM "is being sued in the alter ego." He sought leave to add four new causes of action based on the same alleged facts; he did not seek to add any factual allegations showing KNRM's liability for its own actions.

Moreover, the trial court denied Reyes's motion for leave to amend without prejudice, making clear that Reyes could seek

25

leave to amend after the summary judgment hearing and before entry of judgment, including by ex parte application. (See *Prue v. Brady Co./San Diego, Inc., supra*, 242 Cal.App.4th at p. 1385 ["a request for leave to amend a complaint need not be made before a hearing on a motion for summary judgment; rather, it may be made at the hearing or any time before entry of judgment"]; *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 641 ["'[I]f summary judgment is granted on the ground that the complaint is legally insufficient, but it appears from the materials submitted in opposition to the motion that the plaintiff could state a cause of action, the trial court should give the plaintiff an opportunity to amend the complaint before entry of judgment.'"].) Despite the court's invitation for Reyes to file another motion for leave to amend, Reyes did not do so. Under these circumstances, the court did not abuse its discretion in denying Reyes's motion for leave to amend.

## DISPOSITION

The judgment is affirmed. KNRM shall recover its costs on appeal from Reyes.


FEUER, J.

We concur:



SEGAL, Acting P. J.        STONE, J.

26